ShackblfoRD, J.,
delivered the opinion of the Court.
Newsom Pierce died, in the County of Dyer, in 1846, leaving a Will, which was duly admitted to probate. He was possessed of considerable estate, consisting of lands, negroes and personal effects. He left a, widow, Elizabeth Pierce, and eight children, devisees and dis-tributees. Two of the children, Samuel and Elizabeth, have since died intestate, and without issue. The widow was appointed executrix, and testamentary guardian of the minor children. Ry his Will, he gave his property to his wife for life, and after death, to be equally divided among his children, with power to set apart to his children, such portion of his estate, on coming of age, and wishing to leave the paternal home, as she, and the children, could agree upon. The clauses under which the property is given, is as follows.
“I give and bequeath unto my beloved wife, Elizabeth Pierce, all of my lands, messuage, or tane-ments, with their appurtenances thereunto belonging, lying in the Counties of Dyer and Gibson. I also bequeath unto my beloved wife, Elizabeth, all of my ne-groes, male and female, old and young. Lastly, as to the rest, that is to say, all of my personal estate, goods and chattels, of what kind or nature whatsoever, I give *106 and bequeath to my beloved wife, Elizabeth. I hereby order and declare, that my will is, that my beloved wife shall have and hold, the above specified property, for her own use and benefit, during her natural life, and at her decease, the above named property shall be equally divided among all my children. It is further my will, that should any of my children become of age according to law, or marry, and wish to leave my house and go to themselves, my beloved wife shall have the privilege of giving to such child, or children, such property, or species of property, as they, (that is, the mother and child,) may agree upon, taking due care to have the said property appraised by three disinterested persons, so that said children, or child, shall not obtain or receive more than their proportionate part or parts of said property among all 'my children.”
In 1848, William and Edward Pierce, having arrived at age, the executrix caused to be laid off, 895 acres of land by survey, and had it appraised by three disinterested persons; which appraisement was in writing, signed by them, and valued at three dollars per acre ; and the said lands were taken possession of by consent of the mother, by William and Edward, and the possession continued until the filing of this bill, in 1866. In 1853, Elizabeth, as executrix, executed to William and Edward, deeds for the tract so laid off.
The testator, at the time of his death, was the owner of two tracts; the lands were appraised, and the home tract of 500 acres. The tract appraised had no improvements upon it. Elizabeth Pierce, the widow, died in 1858.
*107 On the 28th of October, 1861, Newsom Pierce, one of the devisees, conveyed to E. J. Arnold, one of the complainants in this bill, his interest in the undivided traet of 500 aeres, on which the testator lived.
This bill is filed by Pate, and wife Lucy, one of the devisees of Newsom Pierce, and E. J. Arnold, for a division of the 500 acre tract, and for a construction of the Will, and against the other devisees of Newsom Pierce.
The bill sets forth the Will, and alleges, Elizabeth, the executrix, under the supposed power in the Will, caused to be appraised and laid off to William and Edward Pierce, 395 acres of the land, who have since held and claimed the same as their own. The balance of the land still being held in common.
The complainant, Arnold, alleges that he is the owner of the interest of Newsom Pierce, in the undivided tract of 500 acres, and exhibits his deed, the recitations of which are as follows: “Containing 500 acres, and is the same on which my mother resided at the time of her death; and I am entitled to one-seventh individual interest of said tract, and in addition to one-seventh, my brothers, William and Edward Pierce, have been advanced in lands, $1,358, and I am, therefore, entitled to be made equal in the division of said lands, which enhances my interest above the one-seventh.” The Bill further alleges, that H. M. Pierce, in the life-time of his mother, received $600, as an advancement.
The bill states, that the Will was destroyed by fire, in the destruction of the Records of the County; that H. M. Pierce has a copy; that it be set up, and the rights of the parties declared; that a division of the *108 lands be made according to tbe rights and interest of the parties.
The answers of the defendants were filed, in which a copy of the Will is exhibited; they admit the allegations of the bill; the appraisement and laying off the' lands; taking possession of the lands in 1848, and the execution of the deed in 1853, and insist that they were valued at their full price; that they have made valuable improvements, etc.; consent to a sale of the 500 acres, for division.'
H. M. Pierce denies that he has received $600, as an advancement by his mother.
The proof shows, that the lands given to William and Edward, in 1848, were appraised at three dollars per acre, that being their full value, by three disinterested persons, which was reduced to writing. They took possession shortly thereafter, and continued in possession until the filing of this bill.
The deeds executed by Elizabeth Pierce, as Executrix, conveying the lands to Edward and William, makes no reference to the appraisement made in 1848. The proof is also clear, that H. M. Pierce received $600, advanced by the Executrix.
Upon the hearing, the Chancellor was of opinion, that the Will of Newsom Pierce, gave power to the widow to make advancements to the children, of real and personal property, upon the conditions, and in the manner specified in the Will; that the conveyances to William and Edward Pierce, were not made in the manner required by the terms of the Will, and were not, therefore, a proper execution of the power vested in her, and the conveyances were declared void.
*109 A reference was ordered to tbe Master, to ascertain whether a division could be made without a sale, with an account of the rents and profits of the land held by Edward and William, and the value of the improvements thereon, etc., etc.
Arnold, the purchaser of Newsom Pierce, was decreed the one-seventh interest of the entire tracts; from which decree the defendants have appealed to this Court.
In the consideration of the principles involved m this case, two questions are presented for our determination:
1st, Was Elizabeth Pierce, the Executrix under the Will of Newsom Pearce, empowered to have the real estate, devised in the Will, appraised and set off to the children; or was she, by the terms of the Will, limited to a distribution of the personal property?
2d, If she was authorized by the Will, to allot the real estate devised, was the appraisement, and the subsequent execution of the deeds to Edward and William Pierce, such an execution of the power in the Will, as vested in them the legal title to the land?
It is insisted for the complainants, by the provisions of the Will, Mrs. Pierce had no power to make advancements in the real estate devised. She was limited by its terms to the personal property; therefore, the exercise of the power, in giving real estate, was void, and no title vested in them. In the constructions of Wills, the rule is, the intention of the testator must govern, and that is to be ascertained from the language employed, from the general scope and purpose of the instrument, from the circumstances and conditions of the testator’s family.
*110 These are well recognized rules in the construction of Wills.
Applying these principles to the construction of the Will, in the case before us, did the testator intend to vest his wife, Elizabeth, with the power of making advancements of real estate to his children ? He was the owner of eight hundred and ninety-five acres of land, in two tracts — five hundred acres in the home tract, and three hundred and ninety-five in unimproved land; also an estate in negroes, and had personal effects. By the second clause of his Will, he gave to his wife all of his real estate; by the third clause, she was given all his slaves, old and young; and by the last clause, he gave to her his goods .and chattels, and provides that she shall hold the above property during her life, and at her death, it shall be equally divided among his children. He further provides, that should any of his children come of age, marry, and go to themselves, his wife should have the privilege of giving to such child or children such property, or species of property, as they — that is, the mother and child — might agree upon. Under this clause of the Will, there is no reference to any particular property; the power is vested in the wife, to give such property, or species of property, as they might agree upon. Why are the- words, “such property, or species of property,” used, if it was confined alone to the personal estate ? The preceding clauses of the Will, describe the property as lands, negroes, goods and chattels.
In giving it to her, he says: “ My beloved wife shall have and hold the above specified property, to her own *111 use, during her natural life;” and in the same clause, he vests her with the power to gire such property, or species of property, as she, and the child or children, may agree upon, vesting in his wife the power to give any property mentioned in the Will, upon the condition of first having it appraised by three disinterested persons, so that one child should not receive more than his proportional share of the estate.
We think the manifest intention of the testator, was, to give to his wife, the power to advance to his children, any species of property that they — that is, the mother and child — might agree upon, either lands, negroes, goods and chattels; and it was the intention, that such child, or children, should be charged with the value of such property, at the time it was given, so that one should not receive more than his proportional part. His intention was, that each child should receive an equal share in his estate, not limiting it to the death of his wife, but in the event, she exercised the privilege of giving it off, at the time given.
It is insisted, that there was not land sufficient to give to each an equal share, and, therefore, he did not intend his wife should make advancements in lands.
The property consisted in lands and negroes. By the rule adopted, of having the property appraised, one child could receive his share in negroes, another in lands. The power of the wife was not restricted, except in having it appraised, as it was left discretionary with her; and the testator appears to have had the most unbounded confidence in her, as she was made executrix and testamentary guardian, without security.
*112 “In the construction of Wills,” says Mr. Justice Story? in his Commentaries, vol. 2, sec. 1068, “Courts of Equity have gone great lengths, in the interpretation of the language of Wills, by creating implied or constructive trusts, from mere recommendatory or precatory words of the testator ; but when a clear direction and choice, to act or not to act, is given, whatever the prior disposition of the property, import absolute and uncontrollable ownership. In all such cases, Courts of Equity will not create a trust.” This being the rule of law governing, Mrs. Pierce, owning the life estate, was not a trustee, but was vested with a power to give off the property, as the children arrived at age, or married, and wished to leave home. No formal words are necessary to create or reserve a power. It may be created by deed or Will,- and it is sufficient that the intention be clearly declared. The creation, execution and construction of powers, all depend on the substantial intention of the parties, and they are to be considered literally and equitably in furtherance of that intention : 4 Kent, 318. A power will enable a dower to dispose of a fee, though it contain no words of inheritance, as in the case of a power given by a testator, to sell or dispose of lands, and this construction is adopted in favor of testator’s intention: 4 Kent, 344; 1 Sugden on Powers, 503.
2d, Mrs. Pierce, having had the land laid off and appraised, placed the defendants, William and Edward, in possession, in 1848, and the subsequent execution of the deed, in 1853, was this such a legal execution of the power, as vested the title in the defendants, William and Edward Pierce ? We think it was. There has been *113 some conflict of authority upon this point, and much discussion; but the principle seems to be definitely settled, where there is an intention to execute a power, a Court of Equity will give effect to it: Crabb on Real Property, 463.
Mr. Justice Story says, (in Peagley vs. Peagley, 1 Collyer, 255,) “The main point, is, to arrive at the object and intention of the donee of the power in the instrument; and that being ascertained, to give effect to it.” The intention to execute the power, must be clear and apparent, so that the transaction may not be susceptible of any other interpretation. It is sufficient, that it appear by acts, words, or deeds, demonstrating the intention: 1 Story’s Rep., 455; 2 Story’s Eq., 432, and the authorities referred to.
It is insisted, that the appraisement having been made in 1848, and the deeds in 1853, and there being no reference in the deeds to the appraisement, it can only convey the life estate of Mrs. Pierce, and was not such an execution of the power, as vested a legal title in the estate, in Edward and William Pierce.
It is a well settled principle, that it is not necessary the intention to execute a power, should appear by express terms, or recitals, in the instrument; it is sufficient if it appear by acts, words or deeds, demonstrating the intention: 2 Story’s Eq., 432, and note; Crabb on Real Property, 463.
When the intention to execute a power can be collected from other circumstances, it will be sufficient, without any reference to the power; for it is well settled, that *114 if a man disposed of that over which he has power, that it is impossible to impute to him any other intention, hut that of executing the power. The act done shall be an execution of the power: Crabb on Real Property, 463, and authorities cited. The execution of the deeds, in 1853, by Mrs. Pierce to Edward and William Pierce, expresses, they were for the consideration of a part of the distributive share of Edward and William Pierce, in the estate of Newson Pierce, with which they are charged in final division. This must be taken, as an intention, on the part of Mrs. Pierce, to carry into effect the power given her under the Will. “If,” said Lord lledesdale, (in 2d Ball & Beaty, 44,) “a person having a power, executes an instrument for a valuable consideration, he is understood, in equity, to engage with the person with whom he is dealing, to make the instrument as effectual as he has power to make it, and it shall have that effect, so far as the person executing it has power to give it that effect ; and where the nature of the instrumect is contrary to what the power prescribes, but demonstrates an intention to charge, it shall have the operation of charging in that form which the power allows.”
The bill, in this case, states, Mrs. Pierce caused to be appraised and laid off to Edward and William Pierce, three hundred and ninety-five acres of land, and does not, by the allegations and statements, seek to disturb the previous settlements of property, but claims and asks for a partition of the five hundred acres.
Arnold is estopped by the recitations in the deed of Newsom Pierce to him, who refers to the advancements *115 made in tbe lands to Edward and William Pierce, and that lie is only entitled to be made equal with them.'
The object of the bill was not for a general division of the estate, but to sell the five hundred acres for partition, charging Edward and William Pierce with the value of the lands received, and H. M. Pierce with $600, alleged to have been advanced, and to equalize the interest of each devisee, in the undivided tract of five hundred acres.
Upon a careful review of the authorities, and application of the principle arising from this record, we are satisfied, a power, under the Will of Newsom Pierce, vested in Mrs. Pierce, the widow, the right to give to the children who wished to leave the paternal home, upon arriving at age, such portions of property, real and personal, as they, the mother and child, might agree upon, subjeet to the limitations of the Will, in having it appraised in the manner designated; and the laying off and appraisement of the lands, and putting the defendants, Edward and William, in possession thereof, with the subsequent execution of the deeds, in 1853, reciting the consideration, being a part of their distributive share in the estate of Newsom Pierce, was a valid execution of the power by Mrs. Pierce, and vested the legal property in Edward and William, in the lands thus laid off.
The proof fully establishes, H. M. Pierce received $600, as an advancemont, for which he was to account on the final settlement of the estate; with which he must be charged.
Arnold, the complainant, is entitled to one-seventh of *116 the undivided five hundred acres, the interest of Newsom Pierce.
The decree of the Chancellor will be reversed. Edward and William Pierce will be charged with the appraised value of the lands in 1848. H. M. Pierce, with $600, received as an advancement in the division of the undivided lands; and it not appearing, whether a division of the five hundred acre tract, can be made without sale, the cause will be remanded to the Chancery Court for proof, and report of the Master, upon which proper decrees will be made, for a division or sale, according to the principles settled in this opinion.